UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil Action No. 23-2662 (RDM) |
| U.S. DEPARTMENT OF HOMELAND SECURITY | | |
| Defendant. | | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO MODIFY PROCESSING ORDER**

**INTRODUCTION**

From the outset of this litigation Defendant U.S. Department of Homeland Security ("DHS") and its subcomponent, the U.S. Customs and Border Protection ("CBP"), have resisted complying with their processing obligations under the Freedom of Information Act ("FOIA"). This resistance echoes CBP's pre-litigation conduct of continually delaying promised productions and repeatedly refusing to provide Plaintiff Project on Government Oversight, Inc. ("POGO") with requested status updates. To address the oldest FOIA request at issue dating back to February 2017, which seeks all use-of-force incidence records in DHS's E-STAR database created prior to February 28, 2017, the Court over DHS's objections ordered DHS to process responsive records at a monthly rate of not less than 750 pages. Minute Order, Dec. 20, 2024.

Nine months later DHS now seeks relief from this order, asking the Court to reduce its processing obligations to no more than 500 pages per month. But while DHS claims the current

order has imposed an "unduly onerous" burden on the agency, its proffered supporting declaration falls far short of demonstrating such a burden. At best, Defendant's motion rests on the proposition that it will take years for the agency to finish processing whether the monthly processing rate is 500 pages or 750 pages—in other words the rate makes no difference. Further, DHS claims POGO's refusal to negotiate any narrowing of its 2017 request justifies reducing the required processing rate. This false representation ignores the past history of this case and once again seeks to blame POGO for the agency's failures. In the absence of proof that the processing order imposes an undue burden on DHS, Defendant's motion must be denied.

## FACTUAL BACKGROUND

This case concerns three FOIA requests, the oldest of which is subject to a required monthly processing rate of 750 pages based in part on the Court's concerns with the age of the request. That request, submitted to DHS on February 28, 2017, seeks all use-of-force incidents recorded in DHS's E-STAR data base. Compl. ¶ 30. At the administrative stage DHS made numerous promises to place the request on a priority list and provide responsive documents by dates certain, all of which it failed to fulfill. *See* Compl. ¶¶ 41-48, 53. Even when POGO agreed to narrow the scope of the request, *id.* ¶ 52, DHS still failed to meet its promise to provide documents by dates certain. *Id.* ¶¶ 54-58. Only then did POGO initiate this lawsuit.

Once in litigation DHS blamed POGO for failing to narrow its request. *See* Status Report, Dec. 12, 2023 (ECF No. 11) at 1-2. In response POGO outlined the facts that demonstrate the problem lies not with POGO and the breadth of its requests but with DHS, which has repeatedly stalled production and reneged on almost every promise it made to POGO. *Id.* at 3. Following this submission the Court held a status conference on December 20, 2023, after which it entered the processing order that DHS now seeks to alter.

2

Separately Plaintiff moved to impose a 500-page monthly processing rate on DHS for a different FOIA request submitted on August 29, 2022, that seeks specified fields from the E-STAR database for the period January 1, 2010 to August 29, 2022. P's M. for a Processing Ord. and Supporting Mem., February 13, 2024 (ECF No. 16). *See also* Comp. ¶ 60. While this request overlaps with the 2017 request the two are not identical. Nevertheless, in opposing Plaintiff's motion DHS falsely claimed the two requests differ only in the time periods that they cover. Mem. in Opp. To P's M. for a Processing Ord., Mar. 1, 2024 (ECF No. 18) ("D's Opp.") at 2. To the contrary, as Plaintiff explained in its reply, the requests differ in at least three significant ways. First, although the use-of-force reports are the original source of information for the E-STAR database, CBP maintains them as separate forms of information. P's Reply in Support of P's M. for a Processing Ord., Mar. 6, 2024 (ECF No. 19) at 3. Second, POGO'S August 29, 2022 request seeks only particular fields from the E-STAR database. *Id.* And third, the formats of the documents POGO seeks from the two requests differ. *Id.*

In its opposition DHS also proposed that for the August 29, 2022 request it produce a spreadsheet containing all incident records that led to the creation of use-of-force reports and that POGO select from that report "a reasonable number of entries" that DHS could then produce "in a timely manner." D's Opp. at 3 n.1. DHS made this proposal in an effort to narrow the FOIA request at issue in the motion—the August 29, 2022 request. *Id.* at 3.

Ultimately the parties moved to vacate the motion after reaching a resolution of the dispute over the August 29, 2022 request (ECF No. 20), which the Court granted. Minute Order, Apr. 4, 2024. Pursuant to that agreed-upon resolution CBP provided POGO with a spreadsheet containing all the fields from the E-STAR database requested in the August 29, 2022 FOIA request. *See, e.g.*, Howard Decl. ¶ 11.

**ARGUMENT**

I. **DHS HAS NOT DEMONSTRATED THAT PROCESSING 750 PAGES PER MONTH IMPOSES ON IT AN UNDUE BURDEN.**

This Court has made clear that it will consider reducing the 750-page monthly processing order only upon a showing that such processing rate is "unduly onerous." Minute Order, June 28, 2024. DHS attempts to meet that burden here with the Declaration of Patrick A. Howard ("Howard Decl.") (ECF No. 26-1). Mr. Howard proffers a variety of statistics, namely: (1) the number of FOIA requests DHS has received to date this fiscal year; (2) the number of staff in the CBP FOIA division, and (3) the number of FOIA requests currently in litigation. Howard Decl. ¶¶ 5-7. As the court in *Seavey v. DOJ* recognized, however, without more,

> this data doesn't actually shed any light on the key question: whether processing particularly large requests at a faster rate would materially slow down the processing of other requests.

266 F. Sup. 3d 241, 246 (D.D.C. 2017).

To answer the question of whether and how processing larger requests like that of the Plaintiff's here would impact processing other requests the court would need to consider other "data points." They include, for example, "the average number of pages generated by FOIA and Privacy Act requests" and how those requested pages are distributed "between queues, and, in particular, the number of pages associated with the larges requests in the large queue." *Id.* at 146-47. Without this data, this Court cannot determine the actual processing capabilities of CBP's FOIA division and "why asking it to do more would cause harm to other requesters." *Id.* at 247.

DHS has instead offered statistics in a vacuum, with no information on how processing POGO's FOIA request at a rate of 750 pages per month specifically impacts either DHS or any other requester. Nor is the Court able to determine if these statistics represent "business as usual," with a predictable workload increase. *See, e.g.*, *Daily Caller News Found. v. FBI*, 387 F.

4

Supp. 3d 112, 118 (D.D.C. 2019); *Gov't Accountability Project v. HHS*, 568 F. Supp. 2d 55, 60 (D.D.C. 2008). Tellingly, DHS's argument here is not that its further compliance with the 750-page processing rate would cause harm to any other requester or that DHS has suffered some cognizable harm from that compliance in the nine months it has been implementing that rate. To the contrary, DHS has been able to process 750 pages per month in a timely fashion. Apparently, it just does not want to do that any longer.

DHS makes two further arguments that carry no weight. First, DHS complains that here the order to process 750 pages requires DHS to, in fact, review and process those pages, which leads to a *production* of 750 pages per month. Howard Decl. ¶ 9. This argument illustrates an unfortunate reality about agency conduct under the FOIA. Agencies often dramatically overstate the number of potentially responsive documents in an apparent attempt to minimize their actual workload, given that processing starts with the body of records agencies have gathered as *potentially* responsive. Here, however, DHS cannot inflate that number to minimize its processing burden given that POGO seeks specified data fields DHS acknowledges having.

Moreover, the nature of the records at issue here undermines this claim. POGO seeks specified data fields—use of force incidents—from a specific data base. Not surprisingly this has resulted in CBP consistently redacting the same fields in each of its monthly productions to date. Thus, while CBP may be required to both process and produce 750 pages per month, given the nature of the requested documents CBP is essentially working from a template each time. This drastically reduces the processing burden.

Second, DHS suggests that reducing its monthly processing load will have no effect on the end result because DHS will still consume "years to finish processing[.]" Howard Decl. ¶ 12. Under this logic any monthly processing rate in a large-volume request is virtually meaningless

short of requiring the agency to process tens of thousands of records per month. Indeed, this logic would justify increasing the current monthly processing rate, not decreasing it.

Taken as a whole, DHS's arguments suggest DHS would simply rather spend its time and resources elsewhere. But the FOIA does not allow DHS to pick and choose among requests for those it would prefer to process, including ones where there is a big divide between the number of records processed and the number of records produced.

## II. DHS FALSELY BLAMES POGO FOR REFUSING TO ENGAGE IN NEGOTIATIONS TO NARROW THE SCOPE OF THE FEBRUARY 28, 2017 FOIA REQUEST.

In further justification of its requested reduction in the monthly processing rate for the 2017 FOIA request Defendant points to what it claims is an unwillingness by Plaintiff to narrow the number of records it seeks to a "reasonable number of reports." Howard Decl. ¶ 11. CBP suggests it only provided the spreadsheet in settlement of the August 29, 2022 FOIA request based on an expectation POGO would use that spreadsheet to narrow its 2017 FOIA request. *Id.* But CBP conflates two different requests that, as explained above, overlap but are not identical.

The much narrower 2022 request sought specified fields and its production satisfied POGO's needs. That is why POGO agreed to accept the spreadsheet in lieu of litigating its motion for a processing order with respect to the August 29, 2022 request. Moreover, CBP produced the spreadsheet in April, more than a month before it first and falsely suggested the production was contingent on POGO's narrowing of its 2017 request. In fact, the agreement that led to POGO's agreement to withdraw its processing motion had no bearing on the 2017 request, which seeks all the data fields in the E-STAR database and not individual use-of-force reports. Thus, CBP's unstated expectation had no basis in fact or reason.

This is far from the first time that DHS has sought to avoid responsibility by placing the

blame on POGO and its alleged refusal to negotiate. *See, e.g.*, D's Opp. at 3 and P's Reply at 2. Government counsel has falsely attributed processing delays to POGO's refusal to answer questions that CBP never even posed. P's Reply at 2. And with its most recent motion to reduce the processing rate for the 2017 request DHS claims with no support whatsoever to have made "good faith efforts to negotiate with Plaintiff[.]" Howard Decl. ¶ 12. But the only effort it has identified is the provision of a spreadsheet in response to Plaintiff's motion for a processing order in an entirely different FOIA request. Once again DHS, not POGO, has fallen short of what the FOIA requires.

## **CONCLUSION**

The picture DHS paints here is, sadly, a picture presented all too often from agencies seeking to justify their failure to comply with the FOIA's requirements: large volumes of pending FOIA requests and insufficient resources to deal with those requests. The solution, however, is not to ask FOIA requesters to bear the entire burden of an agency's failure to adequately fund its FOIA operations. And where, as here, the agency has not shown it has done everything possible yet still fallen short for unpredictable reasons lessening the agency's processing burden is not warranted. Accordingly, for the foregoing reasons Defendant's motion to modify the processing order should be denied.

Dated: September 30, 2024                                        Respectfully submitted,


*/s/ Anne L. Weismann*
ANNE L. WEISMANN
(D.C. Bar No. 298190)
5335 Wisconsin Ave., N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
weismann.anne@gmail.com

Attorney for Plaintiff